# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MIKKI J. SIMON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-19-129-SPS |
| | ) |
| **COMMISSIONER of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Mikki J. Simon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-seven years old at the time of the administrative hearing (Tr. 31). She completed the eleventh or twelfth grade, and has previously worked as a cleanup worker, sewing machine operator, and retail sales clerk (Tr. 19, 33, 295). The claimant alleges that she has been unable to work since September 18, 2014, due to severe depression, PTSD, bipolar disorder, anxiety, twisted nerve in her back, heart attack, and COPD (Tr. 294).

## Procedural History

On July 6, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 25, 2018 (Tr. 13-21). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could perform

simple and some complex tasks with routine supervision; have occasional interaction with supervisors, co-workers, and the general public; and could respond appropriately to changes in a routine work setting (Tr. 17).  The ALJ then concluded that the claimant could return to her past relevant work as a sewing machine operator.  Alternatively, he found that there was work that she could perform in the national economy, *e. g.*, inspector/packager, product assembler, and electrical accessory assembler (Tr. 19-21).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly account for her mental impairments in the RFC, (ii)  failing to account for her nonsevere impairments in the RFC, (iii) finding she could perform past relevant work that was performed over fifteen years ago, and (iv) failing to ask a proper hypothetical of the vocation expert ("VE") as to jobs she could perform at step five.  The Court agrees with the claimant's first and second contentions, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of hypertension, depression, anxiety, and PTSD, as well as the nonsevere impairments of COPD, migraines, arthritis, eye problems, kidney problems, and back pain (Tr. 16).  The relevant medical records reveal that the claimant received mental health treatment, including treatment for depression and anxiety at Carl Albert Community Mental Health Center from November 2011 through October 2014.  Her discharge in 2014 was due to non-compliance and she was assigned a Global Assessment of Functioning Score of 60 at that time (Tr. 379).  On October 16, 2014, the claimant was admitted to Grand Lake Mental Health Center, Inc., for major depressive affective disorder, recurrent, severe, but she was discharged for

noncompliance with that facility on April 24, 2015 (Tr. 414-415). Her level of functioning at that time was noted to be 44 (Tr. 415). That same month she was hospitalized for seven days for a suicide attempt after taking thirty sleeping pills (Tr. 419, 461). She had also had a 15-day emergency detention inpatient hospitalization in January 2015 for suicidal ideation (Tr. 426, 565). In June 2015 the claimant again sought mental health treatment, and was assessed with major depressive disorder, recurrent, without psych, as well as generalized anxiety (Tr. 426). She was noted to have poor memory and attention (Tr. 425). The claimant was again treated in the emergency department on September 15, 2015 for suicidal ideation, stating that she planned to huff paint and gas to kill herself (Tr. 490). She was discharged to Wagoner Mental Health that same day (Tr. 493, 497-499).

In 2016 and 2017, the claimant received primary care treatment at Family Health Center of Southern Oklahoma, where she was treated for, *inter alia*, her anxiety (Tr. 540). In 2017 and 2018, the claimant received mental health treatment at Red Rock Behavioral Health Services for approximately five months (Tr. 580). She was discharged with minimal progress and having made poor progress, with notes reflecting the claimant had not picked up refills of medications or responded to messages or letters sent (Tr. 580). Her diagnoses with Red Rock included bipolar disorder, current episode manic without psych and PTSD (Tr. 585, 589).

Dr. Kathleen Ward, Ph.D., performed a consultative mental status examination of the claimant on April 19, 2017 (Tr. 559-563). Dr. Ward noted the claimant was unable to complete reverse serial 7's, and had some deficits in social judgment and problem solving, and that she had a history of suicide attempts that were sometimes, but not always, related

to relational stressors (Tr. 561). Dr. Ward assessed the claimant with inhalant abuse disorder, moderate to severe, as well as recurrent major depressive disorder, PTSD secondary to abuse history, and rule out borderline personality traits (Tr. 562).

On April 19, 2011, state reviewing physician William Farrell, Ph.D. found that the claimant's mental impairments consisted of affective disorders, anxiety disorders, trauma and stressor-related disorders, and substance addiction disorders (Tr. 151). He did not acknowledge the claimant's repeated hospitalizations for suicidal ideation, and instead noted that she had reliability issues and chronic substance abuse with inhalants and opioids while ignoring the substance abuse connection to the claimant's suicide attempts (Tr. 152). He acknowledged that she had deficits in social judgment and problem solving, as well as a history of self-mutilation, then noted that "SA [suicide attempts] not always associated w/ relational stressors" (Tr. 152). He found that she had mild limitations in the ability to understand, remember, or apply information and to adapt or manage oneself, but that she had moderate limitations in the ability to interact with others and concentrate, persist, or maintain pace (Tr. 152). Dr. Farrell indicated in his mental RFC assessment that the claimant was markedly limited in the ability to interact appropriately with the general public, and that she was moderately limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting (Tr. 155-157). He then concluded that the claimant could understand, remember, and perform simple and

some complex tasks, relate to others on a superficial work basis, and adapt to a routine work setting (Tr. 157).

At the administrative hearing, the ALJ summarized the claimant's hearing testimony, as well as some of the evidence in the record.  However, the ALJ completely ignored any mention of the claimant's repeated suicide attempts, simply noting that the claimant had mental health impairments but that she had been examined on multiple occasions and "demonstrated intact memory, judgment, and control as well as good concentration and fair insight and fund of knowledge, despite being non-compliant with medication and appointments" (Tr. 18).  He assigned great weight to Dr. Farrell's assessment, finding he "correctly opined," and gave diminished weight to the GAF scores in the record, noting they were widely disparate and "at odds with examinations of the claimant within the longitudinal record" (Tr. 19).  He made no mention of Dr. Ward's examination other than a citation to her examination record in support of his conclusion that the claimant demonstrated intact memory, judgment, and control, as well as good concentration and fair insight (Tr. 18).

The claimant first contends that the assigned RFC as to the claimant's mental impairments is unsupported by substantial evidence, and the Court agrees.  "The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has

not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Here, the ALJ failed to cite to any evidence in the record to connect his RFC findings with the evidence related to the claimant's mental impairments. Although the ALJ adopted Dr. Farrell's opinion, neither the ALJ nor the state agency psychologist linked any evidence in the record to show how such limitations account for the claimant's severe mental impairments of depression, anxiety, and PTSD, and both opinions very obviously ignored relevant evidence related to her repeated suicide attempts. *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). It was reversible error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

The ALJ additionally erred when he failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC.  *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration.  This was reversible error.").  *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain.  He did not include any such limitations in either his RFC determination or his hypothetical question.  Nor did he explain why he excluded them.  In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of the listed impairments.  *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications.  However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference.").  This was an improper assessment where, as here, the ALJ appeared to devote

-9-

much of his time at step four to pointing out the inconsistencies in the record rather than determining the claimant's RFC. *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

The claimant additionally argues that the ALJ failed to even properly assess Dr. Farrell's opinion, despite giving it great weight. Specifically, she contends that the ALJ failed to account for Dr. Farrell's finding that she was markedly limited in her ability to interact with the general public when he only imposed a limitation to occasional interaction with the general public, and she contends the RFC likewise fails to account for the numerous moderate limitations he ascribed to her. Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he

must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii).  Here, although the ALJ's RFC assessment found the claimant could perform simple and some complex tasks with routine supervision, and only have occasional interaction with supervisors, coworkers, and the general public, it did not *account for* Dr. Farrell's findings related to her marked limitations in interacting with the general public.  The government asserts that the findings of marked limitations contained in the first section of the mental RFC assessment are merely a "worksheet" and not Dr. Farrell's ultimate opinion.  *See* Social Security Administration Program Operations Manual System (POMS) DI 24510.060, *Mental Residual Functional Capacity Assessment* ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment is for recording the mental RFC determination [and is] the actual mental RFC assessment [as] recorded.").  The Commissioner nevertheless also argues that the claimant has not identified a discrepancy in Dr. Farrell's opinion, and that in any event, any error is harmless because the jobs identified do not require contact with the general public.  *See Nelson v. Colvin*, 655 Fed. Appx. 626, 628-629 (10th Cir. 2016) (finding the Section III narrative adequately captured the limitations found in Section I, and the ALJ's limitation of the claimant to unskilled work accounted for the marked limitations).  However, the Tenth Circuit has *also* found that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the

MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015) (emphasis added).  *See also Guinn v. Berryhill*, 2018 WL 626247, at *3 (D. N.M. Jan. 30. 2018) ("None of these cases stands for the proposition that an ALJ may ignore Section I findings. Such argument is not substantially justified."); *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163-1164 (D. N.M. 2016) ("[T]he Court has surveyed the cases from our circuit that expressly address the distinction between Section I and Section III.  If read in a vacuum, *Smith*[ *v. Colvin*, 821 F.3d 1264 (10th Cir. 2016)] and *Sullivan*[ *v. Colvin*, 519 Fed. Appx. 985 (10th Cir. 2013)] could be interpreted in the Commissioner's favor, but the others could not. . . . While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat: the Section III findings must adequately account for the Section I findings.").  And here, the limitation as to interacting with the general public was marked, not moderate (in addition to the numerous moderate limitations), which bolsters the claimant's argument even further.

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

    **DATED** this 1st day of September, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**